IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

CHRISTOPHER QUAYLE,

    Plaintiff,

v.

HOLLYFRONTIER CORPORATION,
FRANKLIN MYERS,
ANNE-MARIE AINSWORTH,
ANNA CATALANO,
LELDON ECHOLS,
MANUEL FERNANDEZ,
MICHAEL JENNINGS,
CRAIG KNOCKE,
ROBERT KOSTELNIK,
JAMES LEE, and
MICHAEL ROSE,

    Defendants.

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS AND JURY DEMAND**

Plaintiff Christopher Quayle ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

**NATURE OF THE ACTION**

1. This is an action against HollyFrontier Corporation ("HollyFrontier" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their

1

violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed merger (the "Proposed Transaction") of HollyFrontier and Sinclair Oil Corporation ("Sinclair Oil").

2. On August 2, 2021, HollyFrontier and Sinclair entered into a Business Combination Agreement (the "Business Combination Agreement"), pursuant to which HollyFrontier will acquire certain refining, marketing, and other businesses of Sinclair Oil, and in return, The Sinclair Companies ("Sinclair HoldCo") will be issued stock in the new combined entity which will be named HF Sinclair Corporation ("HF Sinclair" or the "Combined Company"). Existing shares of HollyFrontier will be automatically converted on a one-for-one basis into shares of common stock of HF Sinclair, and HF Sinclair will issue approximately 60.2 million shares of common stock to Sinclair HoldCo, representing approximately 26.75% of the outstanding shares. As result, current HollyFrontier shareholders are expected to own approximately 73.25% of the common stock of the Combined Company.

3. On October 29, 2021, Defendants caused to be filed with the SEC a Definitive Proxy Statement (the "Proxy Statement") under Section 14(a) of the Exchange Act in connection with the Proposed Transaction. The Proxy Statement, which recommends that HollyFrontier shareholders vote in favor of, among other things, the issuance of HF Sinclair common stock as consideration to Sinclair HoldCo in connection with the Proposed Transaction (the "Stock Issuance"), omits and/or misrepresents material information concerning: (1) certain financial projections; (2) the financial analyses performed by HollyFrontier's financial advisor, Citigroup Global Markets Inc. ("Citi"), in connection with its fairness opinion; and (3) potential conflicts of interest involving Company insiders.

4. These material misrepresentations and omissions prevent the Company's shareholders from making a fully informed voting decision on the Stock Issuance proposal. Accordingly, the Company's shareholders will be irreparably harmed if these material misrepresentations and omissions are not remedied before the anticipated December 8, 2021 shareholder vote on the Stock Issuance.

## JURISDICTION AND VENUE

5. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

6. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the Company markets and/or transports its products to this District.

8. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

9. Plaintiff is, and has been at all relevant times hereto, an owner of HollyFrontier common stock.

10. Defendant HollyFrontier operates as an independent petroleum refiner in the United States. The company operates through three segments: Refining, Lubricants and Specialty

Products, and HEP. It primarily produces high-value light products, such as gasoline, diesel and jet fuel, and specialty lubricant products, as well as specialty and modified asphalt. The Company is incorporated in Delaware. The Company's common stock trades on the New York Stock Exchange under the ticker symbol, "HFC."

11. Defendant Franklin Myers ("Myers") is Chairman of the Board of the Company.

12. Defendant Anne-Marie Ainsworth ("Ainsworth") is a director of the Company.

13. Defendant Anna Catalano ("Catalano") is a director of the Company.

14. Defendant Leldon Echols ("Echols") is a director of the Company.

15. Defendant Manuel Fernandez ("Fernandez") is a director of the Company.

16. Defendant Michael Jennings ("Jennings") is Chief Executive Officer ("CEO"), President, and a director of the Company.

17. Defendant Craig Knocke ("Knocke") is a director of the Company.

18. Defendant Robert Kostelnik ("Kostelnik") is a director of the Company.

19. Defendant James Lee ("Lee") is a director of the Company.

20. Defendant Michael Rose ("Rose") is a director of the Company.

21. Defendants Myers, Ainsworth, Catalano, Echols, Fernandez, Jennings, Knocke, Kostelnik, Lee, and Rose are collectively referred to herein as the "Individual Defendants."

22. Defendants HollyFrontier and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

23. On August 3, 2021, HollyFrontier issued a press release announcing the Proposed Transaction, which stated, in pertinent part:

4

**HollyFrontier Corporation and Holly Energy Partners Announce Combination with Sinclair Oil and Formation of HF Sinclair Corporation**

- *Creates leading integrated downstream petroleum and renewable fuels company to be named HF Sinclair Corporation*

- *Provides growth to Holly Energy Partners through Sinclair's integrated crude and refined products midstream business*

- *HollyFrontier and HEP announce new plans for capital return to shareholders*

- *HollyFrontier and HEP to Host Investor Conference Call Today at 7:30 AM CT / 8:30 AM ET*

August 03, 2021 06:00 AM Eastern Daylight Time

DALLAS--(BUSINESS WIRE)--HollyFrontier Corporation (NYSE: HFC) ("HollyFrontier") and Holly Energy Partners, L.P. (NYSE: HEP) ("HEP"), today announced they have entered into definitive agreements under which HollyFrontier and HEP will acquire Sinclair Oil Corporation and Sinclair Transportation Company from The Sinclair Companies ("Sinclair").

**HollyFrontier Transaction**

Under the terms of HollyFrontier's definitive agreement, HollyFrontier will acquire Sinclair's:

- Branded marketing business and all commercial activities, which build on an iconic brand with exceptional customer loyalty;

- Renewable diesel business, which made Sinclair a first-mover in the space; and

- Two premier Rocky Mountain-based refineries.

As part of the transaction, HollyFrontier will form a new parent company, named "HF Sinclair Corporation" ("HF Sinclair"), which will replace HollyFrontier as the public company trading on the NYSE. At the closing, existing shares of HollyFrontier will automatically convert on a one-for-one basis into shares of common stock of HF Sinclair, and HF Sinclair will issue approximately 60.2 million shares of common stock to Sinclair, representing 26.75% of the pro forma equity of HF Sinclair with a transaction value of approximately $1.8 billion based on HollyFrontier's fully diluted shares of common stock outstanding and closing stock price on July 30, 2021. HollyFrontier expects to seek the approval of its stockholders under applicable rules of the New York Stock Exchange for the issuance of the HF Sinclair shares to Sinclair.

The transaction will transform HollyFrontier by accelerating its growth while increasing scale and diversification; it also allows HollyFrontier to integrate downstream into branded wholesale distribution. HF Sinclair will drive incremental free cash flow growth through its expanded refining business, integrated distribution network, leading renewable diesel position and growing lubricants and specialties business. The transaction is expected to be accretive to HF Sinclair's earnings, cash flow and free cash flow within the first full year, and to enable the combined company to increase its commitment to return cash to stockholders.

Upon closing of the transaction, HollyFrontier's existing senior management team will operate the combined company. Under the definitive agreements, Sinclair will be granted the right to nominate two directors to the HF Sinclair Board of Directors at the closing. The Sinclair stockholders have also agreed to certain customary lock up, voting and standstill restrictions, as well as customary registration rights, for the HF Sinclair shares to be issued to the stockholders of Sinclair. The new company will be headquartered in Dallas, Texas, with combined business offices in Salt Lake City, Utah.

**HEP Transaction**

Under the terms of the HEP transaction, HEP will acquire Sinclair's integrated crude and refined products pipelines and terminal assets, including approximately 1,200 miles of pipelines, eight product terminals and two crude terminals with approximately 4.5 MMbbl of operated storage. In addition, HEP will acquire Sinclair's interests in three pipeline joint ventures including: Powder Flats Pipeline (32.5% non-operated interest), Pioneer Pipeline (49.9% non-operated interest) and UNEV Pipeline (25% non-operated interest; HEP operates the pipeline and owns the remaining 75% interest). The purchase price for the HEP transaction will consist of an equity issuance of 21 million HEP common units and the payment of $325 million of cash, subject to customary closing adjustments, representing a transaction value of approximately $758 million based on the closing price of HEP units on July 30, 2021. Upon closing of the HEP transaction, HEP's existing senior management team will continue to operate HEP. Under the definitive agreements, Sinclair will be granted the right to nominate one director to the HEP Board of Directors at the closing. The Sinclair stockholders have also agreed to certain customary lock up restrictions and registration rights for the HEP common units to be issued to the stockholders of Sinclair. HEP will continue to operate under the name Holly Energy Partners, L.P.

The transactions have been unanimously approved by both HollyFrontier's and HEP's Board of Directors and are expected to close in mid-2022, subject to customary closing conditions and regulatory clearance, including the expiration or termination of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act. In addition, the HFC transaction and the HEP transaction are cross-conditioned on each other.

*   *   *

Ross Matthews, Chairman and Chief Executive Officer of Sinclair commented, "As the oil and gas industry has evolved in recent years, we have carefully considered how best to position Sinclair's refinery and logistics assets and their related operations for the future. We're confident these businesses—and the dedicated employees who operate them—will continue to thrive under this new ownership structure. We expect these businesses will benefit significantly from HollyFrontier's and HEP's operational expertise, their network of refineries and midstream assets in the Western U.S., and the flexibilities that come with being part of a larger organization. Sinclair's employees bring a wealth of talent and capability, including in the production of renewable diesel, which will be an important and growing line of business for HF Sinclair. Sinclair also adds to HF Sinclair an outstanding and extremely successful brand marketing team. The transaction will help accelerate the ongoing rapid expansion of our Sinclair branded retail sites and the iconic DINO brand."

"We also believe that HollyFrontier and HEP are an excellent cultural fit, with a shared commitment to integrity and respect for our employees, our communities and the environment," Mr. Matthews explained. "We anticipate a seamless transition for our employees, distributors and other stakeholders following the closing of the transactions."

**Strategic and Financial Benefits**

HollyFrontier's acquisition of Sinclair's branded marketing business, refineries and its renewable diesel business is expected to:

- **Diversify HollyFrontier's Business with the Addition of Sinclair's Iconic Brand and Integrated Distribution Network.** By adding a branded wholesale business, the combined company will have the opportunity to grow an iconic brand across a range of HollyFrontier products and geographies. HollyFrontier will add a footprint of over 300 distributors and 1,500 branded locations across 30 states, with over 2 billion gallons of annual branded fuel sales.

- **Increase the Size and Scale of HollyFrontier's Renewables Business.** Sinclair's renewable diesel unit ("RDU"), co-located at its Sinclair, Wyoming refinery, processes soybean oil and tallow into renewable diesel that is sold into California. The RDU has recently been expanded to produce 10,000 barrels per day and Sinclair is currently in the process of constructing a pre-treatment unit, allowing for further feedstock advantage and flexibility. Once the transaction is complete, the combined renewables business is expected to produce approximately 380 million gallons of renewable diesel per year and will be a leading renewable diesel producer in the U.S. with the size and scale to support logistical, procurement, feedstock and operational synergies.

- **Add Complementary Rocky Mountain Refineries to HollyFrontier's Network**. The Sinclair and Casper Refineries are complementary to HollyFrontier's existing refinery network and will expand the combined company's footprint in the Rocky Mountain region. Like HollyFrontier's existing refineries, the Sinclair refineries are feedstock advantaged, given their Northern Tier access to Canadian and Rocky Mountain crudes.

  The combined refining network will feature seven complex refineries in the Rocky Mountains, Mid-Continent, Southwest and Pacific Northwest regions and will have a combined crude oil processing capacity of 678,000 barrels per stream day. Each refinery has the complexity to convert crude oils into a high percentage of gasoline, diesel and other high-value refined products.

- **Deliver Financial Benefits Through Accretion and Cost Savings**. The transaction is expected to be accretive to HF Sinclair's earnings, cash flow and free cash flow within the first full year. The transaction is expected to generate $100 million in run-rate synergies, as well as another $100-200 million in one-time savings during the first two years post close through working capital optimization.

- **Enable the Combined Company to Generate Significant Free Cash Flow, Maintain Strong Balance Sheet and Facilitate the Return of Capital to Stockholders.** HollyFrontier's credit profile is expected to be enhanced through reduced leverage, increased scale and diversification of businesses. We expect the combined company to maintain a strong balance sheet and investment grade credit rating. Fueled by significant free cash flow generation, the combined company expects to return capital to stockholders through both dividends and share repurchases.

- **Deepen HollyFrontier's and Sinclair's Commitment to ESG and Sustainability.** HollyFrontier and Sinclair share a common philosophy on commitments to environmental stewardship, sustainability and strong corporate governance. The combined business will build on each company's ongoing ESG efforts with increased renewables scale, a shared commitment to health and safety practices that best serve employees and communities, and a focus on risk management.

HEP's acquisition of Sinclair's integrated crude and refined product pipeline and terminal assets, including interests in three midstream joint ventures, is expected to:

- **Expand HEP's Scale and Earnings.** HEP's acquisition of Sinclair's expansive network of crude and product assets provides an integrated system with connectivity to key crude hubs in the Rockies, including Casper, Guernsey and Cheyenne. The acquired assets are expected to

8

- produce stable revenues supported by long-term minimum volume commitments from HF Sinclair.

- **Extend HEP's Access to Growing Geographies through Finished Product Pipelines and Storage through Additional Joint Ventures.** The assets in the acquired joint ventures serve multiple regions and are strategically located to meet increasing demand for finished product pipelines and storage.

**Financial Targets and New Plan to Return Capital**

HF Sinclair will focus on maintaining its investment grade balance sheet and delivering significant free cash flow while utilizing a balanced approach to capital investment and cash return to stockholders. As part of its commitment to cash return, HF Sinclair intends to focus on the following strategy:

- **Near-term**: Reinstate the regular dividend of $0.35/share no later than the second quarter of 2022.

- **Mid-term (next 18 months)**: Return $1 billion of cash to stockholders through regular dividends and share repurchases by the first quarter of 2023.

- **Long-term (2023 and beyond)**: Implement a target payout ratio of 50% of adjusted net income in the form of regular dividends and share repurchases.

HEP's acquisition of Sinclair's logistics assets is expected to provide enhanced earnings power, allowing for further deleveraging and incremental cash return to unitholders. For its commitment to cash return, HEP intends to incorporate the following strategy:

- **Near-term:** Continue to reduce leverage while paying a quarterly distribution of $0.35/unit.

- **Mid-term (next 18 months):** Reduce leverage ratio to 3.5 times EBITDA while targeting a distribution coverage ratio of 1.5 times. HEP also expects to increase its quarterly distribution with the option of repurchasing units with excess free cash flow.

- **Long-term (2023 and beyond):** Maintain leverage ratio below 3.0 times EBITDA while targeting a distribution coverage ratio of 1.3 times. HEP expects to continue increasing the quarterly distribution with the option of repurchasing units with excess free cash flow.

**Advisors**

Citi is serving as financial advisor to HollyFrontier, and Morgan, Lewis & Bockius is serving as HollyFrontier's legal counsel. Bank of America Merrill Lynch is serving as financial advisor to the HEP Conflicts Committee, Bracewell is serving

as HEP's legal counsel and Morris, Nichols, Arsht & Tunnell LLP is serving as the HEP Conflicts Committee's legal counsel. Wachtell, Lipton, Rosen & Katz is serving as legal counsel to both HollyFrontier and HEP.

### B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions

24. The Proxy Statement, which recommends that HollyFrontier shareholders vote in favor of the Stock Issuance, omits and/or misrepresents material information concerning: (1) certain financial projections; (2) the financial analyses performed by Citi in connection with its fairness opinion; and (3) potential conflicts of interest involving Company insiders.

25. The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Our Reasons for the Sinclair Acquisition; (ii) Opinion of HollyFrontier's Financial Advisor; and (iii) Certain Forecasted Financial Information.

26. Unless and until the material misstatements and omissions (referenced below) are remedied before the anticipated December 8, 2021 shareholder vote on the Stock Issuance, HollyFrontier shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

#### 1. Material Omissions Concerning Certain Financial Projections

27. The Proxy Statement omits material information concerning certain financial projections.

28. With respect to the "HollyFrontier Forecast Financial Information," the Proxy Statement fails to disclose: (1) all line items underlying (i) Consolidated Adjusted EBITDA, (ii) Adjusted Net Income Attributable to HollyFrontier Stockholders, and (iii) Deconsolidated Cash Flow from Operations; (2) the net income projections (unadjusted); and (3) a reconciliation of all

non-GAAP to GAAP metrics.

29. With respect to the "Sinclair NewCo Forecast Financial Information," the Proxy Statement fails to disclose: (1) all line items underlying (i) Consolidated Adjusted EBITDA, and (ii) Deconsolidated Cash Flow from Operations; (2) the net income projections; and (3) a reconciliation of all non-GAAP to GAAP metrics.

30. With respect to the "Combined Company Pro Forma Forecasted Financial Information," the Proxy Statement fails to disclose: (1) all line items underlying (i) Consolidated Adjusted EBITDA, (ii) Adjusted Net Income Attributable to HollyFrontier Stockholders, and (iii) Deconsolidated Cash Flow from Operations; (2) the net income projections (unadjusted); and (3) a reconciliation of all non-GAAP to GAAP metrics.

31. The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of the Company and combined company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

32. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 2. Material Omissions Concerning Citi's Analyses

33. In connection with the Proposed Transaction, the Proxy Statement omits material information concerning analyses performed by Citi.

34.     With respect to Citi's "*Selected Public Companies Analyses*" for the Sinclair Downstream Business on a consolidated and sum-of-the-parts basis, the Proxy Statement fails to disclose the individual multiples and financial metrics and enterprise values for each company analyzed.

35.     With respect to Citi's "*Selected Precedent Transactions Analysis*," the Proxy Statement fails to disclose the individual multiples and financial metrics for each selected transaction, the closing dates of each transaction, and the values thereof.

36.     With respect to Citi's "*Discounted Cash Flow Analysis*" for the Sinclair Downstream Business, the Proxy Statement fails to disclose: (1) the unlevered, after-tax free cash flows the Sinclair Downstream Business was forecasted to generate during fiscal years ending December 31, 2022 through December 31, 2025, including all underlying line items thereof; (2) the terminal values utilized in the analysis; and (3) all inputs and assumptions underlying the selected range of discount rates of 8.3% to 9.3% and EBITDA multiples of 4.9x to 6.5x.

37.     With respect to Citi's "*Selected Public Companies Analyses*" for HollyFrontier on a consolidated and sum-of-the-parts basis, the Proxy Statement fails to disclose the individual multiples and financial metrics and enterprise values for each company analyzed.

38.     With respect to Citi's "*Discounted Cash Flow Analysis*" for HollyFrontier, the Proxy Statement fails to disclose: (1) the unlevered, after-tax free cash flows that HollyFrontier was forecasted to generate during fiscal years ending December 31, 2022 through December 31, 2025, including all underlying line items thereof; (2) the terminal values utilized in the analysis; and (3) all inputs and assumptions underlying the selected range of discount rates of 8.2% to 9.2% and EBITDA multiples of 4.8x to 6.5x.

39.     The Proxy Statement fails to disclose the following concerning Citi's analysis of

Wall Street research analysts' price targets for HollyFrontier common stock: (1) the individual price targets observed by Citi in its analysis; and (2) the sources thereof.

40. The valuation methods, underlying assumptions, and key inputs used by Citi in rendering its purported fairness opinion must be fairly disclosed to HollyFrontier shareholders. The description of Citi's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses.

41. Without the information described above, HollyFrontier shareholders are unable to fully understand Citi's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction.

42. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 3. Material Omissions Concerning Company Insiders' Potential Conflicts of Interest

43. The Proxy Statement omits material information concerning potential conflicts of interest involving Company insiders.

44. The Proxy Statement provides that Defendant Jennings will continue as a director and CEO of the Combined Company post-close,stating in relevant part:

> **Board Following the Sinclair Acquisition**
> Pursuant to the Stockholders Agreement, Sinclair HoldCo will nominate two directors to the New Parent Board prior to the closing of the Sinclair Acquisition. Following the closing of the Sinclair Acquisition, there are expected to be 12 directors on the New Parent Board: nine independent directors of HollyFrontier who will continue as directors of New Parent, two directors designated by Sinclair HoldCo, and Michael C. Jennings, who will continue as a director and Chief Executive Officer of New Parent. Messrs. Franklin Myers, Leldon E. Echols, Manny J. Fernandez, Michael E. Rose, R. Craig Knocke, Robert J. Kostelnik, James H. Lee and Mmes. Anne-Marie N. Ainsworth and Anna C. Catalano are expected to continue as independent directors of New Parent following the effective time of the Sinclair Acquisition. However, Mr. Rose will reach the mandatory retirement

age of 75 prior to HollyFrontier's 2022 Annual Meeting and will not stand for re-election. If the Sinclair Acquisition were to close after the 2022 Annual Meeting, then Mr. Rose would not serve as a director of New Parent.

45. Further, the press release announcing the Proposed Transaction states that, "[u]pon closing of the transaction, HollyFrontier's existing senior management team will operate the combined company."

46. The Proxy Statement, however, fails to adequately disclose the details of all employment-related and compensation-related discussions and negotiations concerning the Company's officers and directors, including the parties to such communications, when they occurred, and the specific content discussed/communicated.

47. Any communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to shareholders. This information is necessary for shareholders to understand potential conflicts of interest of management and the Board. Such information may illuminate the motivations that would prevent fiduciaries from acting solely in the best interests of the Company's shareholders.

48. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

49. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

50. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of

the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

51.     Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

52.     The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

53.     By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

54.     Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

**COUNT II**
**Violations of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

55.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

56.     The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy

Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

57. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

58. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Proxy Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

59. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

60. By virtue of the foregoing, the Individual Defendants have violated Section 20(a)

of the Exchange Act.

61.  As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.  Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B.  In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.  Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D.  Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E.  Granting such other and further relief as the Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: November 16, 2021

Respectfully submitted,

**HALPER SADEH LLP**

/s/ Daniel Sadeh
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
          zhalper@halpersadeh.com

*Counsel for Plaintiff*